Leo R. JANSKY, Respondent,

v.

COLD SPRING GRANITE COMPANY, self-insured, Respondent,

and

State Treasurer, as Custodian of the Special Compensation Fund, Relator.

No. C8–82–901.

Supreme Court of Minnesota.

March 25, 1983.

Hubert H. Humphrey, III, Atty. Gen., and Harold W. Schultz, II, Sp. Asst., St. Paul, for relator.

Joseph T. Herbulock, Minneapolis, for Jansky.

Koll & McCoy and Laurence F. Koll, St. Paul, for Cold Spring Granite Co.

KELLEY, Justice.

The state treasurer, custodian of the special compensation fund, sought review of a decision of the Workers' Compensation Court of Appeals ordering reimbursement to Cold Spring Granite Company for compensation awarded its employee, Leo Jansky. Relator challenges only the ordered reimbursement for an award to employee for a 50 percent permanent partial disability of the body as a whole due to impairment of his lungs by occupationally related silicosis and other obstructive lung disease. We remand to permit the Court of Appeals to reconsider its decision and, if it determines that there is substantial evidence to support it, to supply an essential finding of fact.

Employee worked as a laborer in the quarry and monument works owned by Cold Spring from 1946 until December 16, 1979. During his employment he suffered several injuries and also developed chronic obstructive lung disease, silicosis and emphysema. On March 17, 1961, employee sustained serious injuries to his low back, left leg, and right arm resulting in two years of temporary total disability and significant permanent partial disabilities. On November 27, 1970, he again injured his back and was totally disabled for 8 weeks. In February 1972 and again in November 1978 he injured his left hand. On January 25, 1978, he fractured his right arm and

again injured his low back, those injuries resulting in additional permanent partial disability to his arm and back. From 1975 on employee also suffered considerably from shortness of breath and apparently had had that symptom in lesser degree for several prior years. By May 1979 he discussed taking a leave with his foreman because of that condition and his difficulty walking.

On December 16, 1979 employee was discharged for having left work early twice in the preceding week and for having punched out the timecard of a fellow worker who had left early that night. Employee then registered at a state employment office but was told that there was no work available. In October 1980 he filed a claim petition seeking compensation for permanent total disability (later amended to temporary total), additional permanent partial disability resulting from the injuries of January 25, 1978, and 50 percent permanent partial disability of the body as a whole due to his lung disease. Cold Spring denied liability and joined the state treasurer in his capacity as custodian of the special compensation fund because the 1961 injury had been formally registered in July 1962 and the November 1970 injury had been automatically registered pursuant to the applicable statutes.[1]

After finding that the described orthopedic injuries had occurred, that the 1961 injury had resulted in permanent partial disability of the back, left leg and left arm, that employee sustained additional permanent partial disability of the right arm and back by reason of the January 25, 1978, injury, that he had developed emphysema as a result of work exposure to silica and had sustained a 50 percent permanent partial disability of the whole body by reason of his lung disease, and that he was temporarily totally disabled from December 17, 1978, as a result of the orthopedic injuries and emphysema, the compensation judge awarded employee compensation pursuant

to those findings.[2] After further finding that the 1961 and 1970 injuries had been duly registered and that employee's disability after the injury of January 25, 1978, was substantially greater because of his preexisting impairment, the compensation judge also awarded Cold Spring reimbursement for permanent partial disability benefits and medical expenses resulting from the January 25, 1978, injuries, other than the statutory exclusion of 26 weeks of compensation and $1,000 provided in Minn.Stat. § 176.131, subd. 1 (1965), and for temporary total disability payable after December 17, 1978.

Both the state treasurer and Cold Spring appealed, the state treasurer claiming that reimbursement was improperly awarded and Cold Spring alternatively insisting that employee does not have an occupational disease or that Cold Spring should have been awarded reimbursement for the compensation employee was awarded because of that disease.

The Court of Appeals set aside the compensation judge's finding that employee "had developed an occupational disease of emphysema, also called obstructive lung disease," substituting a finding that as a result of his exposure to silica and other pollutants through his employment, "employee developed an occupational disease of silicosis and such other obstructive lung disease accompanied by emphysema." The Court of Appeals further modified the compensation judge's finding relating to permanent partial disability to reflect that employee sustained a 50 percent permanent partial disability of the whole body "due to his silicosis and emphysema condition," but otherwise affirmed his findings.

The Court of Appeals also affirmed the compensation judge's determination that Cold Spring be awarded reimbursement for permanent partial disability resulting from the January 25, 1978 injuries (subject to the statutory limitations), but added a further "DETERMINATION":

1. Minn.Stat. § 176.13(c) (1961) and Minn.Stat. § 176.131, subd. 4 (1971).

2. At the compensation hearing Cold Spring offered to furnish employee work which he could

perform in his present condition, so as such work has been furnished, presumably employee is not now receiving temporary total disability benefits.

IT IS FURTHER ORDERED that the employer Cold Spring Granite Company, is entitled to and is hereby awarded reimbursement from the State Treasurer, Custodian of the Special Compensation Fund, for all permanent partial disability to the employee for employee's permanent partial disability of the lung, said occupational disease arising out of and in the course of his employment and further that said occupational disease in company with the orthopedic problems was substantially greater and that the employer, self-insurer, is entitled to reimbursement.

In this court the state treasurer's challenge to that determination is made on three grounds. He argues that the unopposed medical testimony established that neither this disability nor its resultant medical expenses were any greater by reason of the employee's preexisting injuries. He argues also that the statutes in effect on the date an employee is registered as physically impaired govern the extent of an employer's right of reimbursement and that Minn.Stat. § 176.131, subd. 7 (1971), in effect from 1965 to 1973, expressly provided that an occupational disease cannot be a second or subsequent injury. Finally, he contends that Cold Spring cannot obtain reimbursement because it did not register employee's silicosis retroactively after December 16, 1979, pursuant to Minn.Stat. § 176.131, subd. 3(b) (1982). Because of our disposition of this matter at this time, we express no view on the merits of these claims.

■ We have concluded that the decision under review lacks a finding which is a prerequisite to an employer's right to reimbursement: A finding that the employee's

disability following his most recent personal injury, the occupational disease which was found to have contributed to his temporary total disability after December 16, 1978, is substantially greater because of his preexisting physical impairment than what would have resulted from the lung disease alone. That finding is required, whether the liability of the special compensation fund is measured by Minn.Stat. § 176.13(a) (1961), in effect when employee was first registered as physically impaired, or by Minn. Stat. § 176.131, subd. 1 (1969), in effect when he was registered following his 1970 injury, or by the present section 176.131, subd. 1, in effect on December 17, 1978.[3]

■ The compensation judge made a finding which clearly met the statutory requirement:

That the employee's disability after the personal injury of January 25, 1978, was substantially greater because of the preexisting physical impairments to the right arm and low back than would have resulted from the personal injury of January 25, 1978 alone.

That finding was affirmed by the Court of Appeals, but it did not add a further finding that employee has suffered disability due to his occupational disease which is substantially greater because of his preexisting impairment than what would have resulted from the disease alone.

Nor do we believe that either the recital in the Court of Appeals' additional determination, quoted above, that "said occupational disease in company with the orthopedic problems was substantially greater" or the three separate opinions accompanying the decision under review are equivalent to such a finding. Its importance is obvious,

---

**3.** Minn.Stat. § 176.13(a) (1961) permitted reimbursement to an employer who paid compensation

[i]f an employee who has a physical impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment resulting in compensation liability for permanent or temporary partial or total disability that is substantially greater by reason of the combined effects of the pre-existing impairment and subsequent injury than that which would have resulted from the subsequent injury

alone in the absence of the pre-existing impairment * * *.

Section 176.13 was repealed in 1965 and replaced by section 176.131, subd. 1 of which provides reimbursement (subject to statutory limitations) for compensation paid

[i]f an employee incurs personal injury and suffers disability that is substantially greater, because of a pre-existing physical impairment, than what would have resulted from the personal injury alone * * *.

This language has remained the same to the present.

however, since the reimbursement challenged by the state treasurer is appropriate only if grounded upon such a finding. Consequently, although we retain jurisdiction, we remand so that the Court of Appeals may reconsider its decision and, if it determines that there is substantial evidence to support it, supply this essential finding of fact. Following its reconsideration, we direct that the matter be returned to us for final disposition.

Remanded.